# United States Court of Appeals for the Federal Circuit

2007-3056

ROBENA G. REID,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD

Respondent,

and

DEPARTMENT OF TRANSPORTATION,

Intervenor.

James S. DelSordo, Argus Legal, LLC, of Manassas, Virginia, argued for petitioner.

Jeffrey A. Gauger, Attorney, Office of the General Counsel, United States Merit Systems Protection Board, of Washington, DC, argued for respondent. With him on the brief were B. Chad Bungard, General Counsel, Rosa M. Koppel, Deputy General Counsel, and Sara B. Rearden, Attorney.

Allison Kidd-Miller, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for intervenor. On the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, Todd M. Hughes, Assistant Director, and Steven J. Abelson, Attorney.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3056

ROBENA G. REID,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF TRANSPORTATION,

Intervenor.

_____

DECIDED:  November 19, 2007

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and GAJARSA, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Robena G. Reid appeals from the decision of the Merit Systems Protection Board ("Board") dismissing her Individual Right of Action ("IRA") appeal for lack of jurisdiction. <u>Reid v. Dep't of Transp.</u>, DC-1221-06-0503-W-1 (M.S.P.B. Sept. 28, 2006) (initial decision dated June 7, 2006).  Because the Board's decision was not in accordance with law, we reverse and remand for further proceedings.

BACKGROUND

At the time relevant to this appeal, Reid was employed as a financial economist in the Federal Transit Administration ("FTA") of the Department of the Treasury ("Agency"). Reid worked in the Office of Policy Development reporting to Brigid Hynes-Cherin, Deputy Associate Administrator for Budget and Policy. In April 2004, Reid was temporarily assigned (detailed) to the Office of Budget, reporting to Kristin Clarke, FTA Budget Director. During that assignment, Clarke asked Reid to prepare a statement of work and procurement for a managerial cost accounting project. Reid alleges that Clarke instructed her to prepare the statement of work and procurement to justify the award of a sole source contract to a large business. She states that in September of 2004 she informed Clarke, Hynes-Cherin, and Robert Tucillo, Director of the Office of Policy Development, that she believed a sole source procurement would violate Federal Acquisition Regulations 48 C.F.R. Parts 6 and 19 relating to full and open competition and awards to small, disadvantaged businesses. She also alleges that she was subject to adverse personnel actions by Hynes-Cherin after returning to her normal assignment late in 2004.

On April 26, 2006, Reid filed an IRA appeal at the Board claiming that she had been subject to adverse personnel actions for conduct protected under the Whistleblower Protection Act ("WPA"). See 5 U.S.C. § 2302(b)(8). On May 1, 2006, the Administrative Judge ("AJ") issued an order explaining the criteria for an IRA appeal and requiring Reid to provide evidence and argument demonstrating that her appeal was within the Board's jurisdiction. Reid filed her response on May 10, 2006.

On June 7, 2006, the AJ concluded that Reid had failed to make nonfrivolous allegations sufficient to establish Board jurisdiction and dismissed the appeal without a hearing. The AJ determined that Reid's allegations were insufficient on several grounds: first, the AJ stated that Reid had failed to disclose the allegedly improper actions to anyone who could remedy them; second, the AJ concluded that Reid could not believe that the information she disclosed reasonably evidenced a violation of law, rule, or regulation because the course of action she complained of was never taken; finally, the AJ concluded that Reid failed to make a nonfrivolous allegation that the disclosure was a contributing factor in a covered personnel action.

On September 28, 2006, the full Board denied Reid's petition for review because it found no new, previously unavailable evidence or error of law by the AJ. See 5 C.F.R. § 1201.115. The AJ's initial decision thus became the final decision of the Board. See 5 C.F.R. § 1201.113. Reid timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

On appeal, Reid argues that she made nonfrivolous allegations of a protected disclosure under the WPA and of adverse personnel actions that resulted from the disclosure. Reid argues that it is not necessary for a violation of law, rule, or regulation to have actually occurred for there to be a protected disclosure so long as she reasonably believed the relevant course of action would result in such a violation. She also argues that her disclosure to Tucillo was adequate to inform someone who could act to prevent the wrongdoing because she was working on a detail outside of her normal duties. Finally, Reid argues that the loss of her telecommuting privileges and

the refusal of reasonable accommodation for an unidentified disability were adverse personnel actions covered by the statute.

The government responds that Reid could not have had a reasonable belief in a violation of law, rule, or regulation because the conduct she complained of never actually occurred. The government also argues that Reid's alleged disclosure was inadequate because it was only made to her supervisors, Tucillo being the supervisor of Hynes-Cherin. Finally, the government argues that Reid failed to identify the official taking the adverse actions and when the actions were taken. The government adds that Reid has failed to demonstrate that the loss of telecommuting privileges and the failure to accommodate a disability are covered by the WPA. However, at oral argument, the government conceded that in fact it was clear that Hynes-Cherin was the official alleged to have taken the adverse personnel actions in the spring of 2005 and that Tucillo was not an alleged wrongdoer to whom a disclosure would be ineffective.

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).

We conclude that the Board's decision was not in accordance with law. First, the Board erred in holding that a disclosure of an action never taken cannot qualify as a protected disclosure under the WPA. The WPA provides:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—
(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
(i) a violation of any law, rule, or regulation

5 U.S.C. § 2302(b)(8)(A)(i). The language of the statute indicates Congress's intent to legislate in broad terms, and we conclude that, absent some exclusionary language, a cramped reading of the statute to exclude potential violations not carried out would be counter to that intent. A reasonable belief that a violation of law, rule, or regulation is imminent is thus sufficient to confer jurisdiction on the Board under the WPA.

The Board has previously determined that § 2302(b)(8) is satisfied by the disclosure of potential violations "where they evidence a reasonable belief of wrongdoing" and "the potential wrongdoing [is] real and immediate." Ward v. Dep't of the Army, 67 M.S.P.R. 482, 488-89 (1995). The Board in Ward reasoned that requiring a violation of law, rule, or regulation to occur before the employee could make a protected disclosure would force the employee either to act without protection or to risk being partly responsible for the violation. Id. The Board in Ward also concluded that it was Congress's intent to encourage disclosures in order to protect taxpayers from illegality, waste, and abuse. See id. We agree with the Board's reasoning in Ward. The government is far better served by having the opportunity to prevent illegal, wasteful, and abusive conduct than by notice that it may only act to reduce the adverse consequences from such conduct that has already occurred. Reid has alleged such a

reasonable belief of a potential violation; whether that allegation can be proven is a question on the merits that does not properly form a part of the jurisdictional inquiry.

In holding that a disclosure of an impending action can qualify under the WPA, we do not intend to convey the idea that any mere thought, suggestion, or discussion of an action that someone might consider to be a violation of a law, rule, or regulation is a justification for a whistleblower complaint. Discussion among employees and supervisors concerning various possible courses of action is healthy and normal in any organization. It may in fact avoid a violation. When such discussion proceeds to an instruction to violate the law must depend on the facts of a given case. But a holding that an instruction to carry out an act can never qualify under the WPA if the act never occurred is too bright a line. The determination depends on the facts.

The Board also erred in holding that alerting an innocent supervisor of an accused wrongdoer to a purported violation does not qualify as a protected disclosure. Alerting a supervisor who is not an alleged wrongdoer is sufficient to constitute "disclosure" under the WPA. While "the WPA does not apply where an employee makes complaints to the employee's supervisor about the supervisor's own conduct," we have stated that "[a]ny government employee, in a supervisory position, other than the wrongdoer himself, is in a position to 'correct' or 'remedy' the abuse by bringing the matter to the attention of a higher authority." Huffman v. Office of Pers. Mgmt., 263 F.3d 1341, 1348, 1351 (Fed. Cir. 2001). As noted above, the government concedes that Reid has alleged no wrongdoing on the part of Tucillo and that he is in a supervisory position. Furthermore, as the supervisor of Hynes-Cherin, one of the alleged wrongdoers, and the second level supervisor of Reid, Tucillo is one of the most

logical people to whom Reid could have made her alleged disclosure. The Board therefore erred in concluding that Reid's disclosure could not be protected because it was made to Tucillo.

Reid also made a nonfrivolous allegation that a protected disclosure was a contributing factor in a covered personnel action. As the AJ stated, changes in work duties and disciplinary action are personnel actions that are within the Board's jurisdiction. See 5 U.S.C. § 2302(a)(2)(A). As acknowledged by the government, Reid clearly alleged that Hynes-Cherin was the official taking these actions and that the actions occurred in and around March of 2005. A whistleblower need only allege that the "deciding official knew of the disclosure" and that the adverse action "was initiated within a reasonable time of that disclosure" in order to make a prima facie case that the disclosure was a contributing factor in the adverse action. See 5 U.S.C. § 1221(e)(1); Kewley v Dep't of Health & Human Serv., 153 F.3d 1357, 1361 (Fed. Cir. 1998). Thus, Reid clearly has alleged facts sufficient, if true, to meet the prima facie standard, and it was contrary to law for the AJ to conclude otherwise. See, e.g., Woodworth v. Dep't of Navy, 105 M.S.P.R. 456, 464 (2007) (finding action eight months after disclosure was within a reasonable time). Also, the AJ failed to explain why the termination of Reid's telecommuting work agreement could not constitute a "disciplinary or corrective action," "a decision concerning . . . benefits," or a "significant change in . . . working conditions." See 5 U.S.C. § 2302(a)(2)(A). We therefore consider that decision to be arbitrary. On the other hand, Reid fails to explain why the denial of reasonable accommodation for a disability should be considered a "personnel action" within the meaning of the WPA.

She merely makes a conclusory statement with no support for her assertion. We thus decline to address that argument.

CONCLUSION

For the foregoing reasons, we reverse the Board's decision and remand for further proceedings.

REVERSED AND REMANDED